Dewey ROBERSON, Plaintiff in Error,

v.

Mattie ROBERSON, Defendant in Error.

No. 41816.

Supreme Court of Oklahoma.

April 2, 1968.

Ed Dudley, Madill, J. E. Bullard, Tishomingo, for plaintiff in error.

Welch & Minter, Don Welch, Jr., Joseph O. Minter, Madill, for defendant in error.

BERRY, Justice.

This appeal involves the correctness of a judgment rendered in an action brought by defendant in error, hereafter called plaintiff, for divorce and property settlement. No issue is presented relative to granting plaintiff a decree of divorce. The sole issue considered involves the propriety of the trial court's purported equitable division of property acquired during coverture.

When the divorce action was filed, May 10, 1965, the parties were past 60 years of age. They were of mature years when

married in 1959 in California where both were living, plaintiff then being unemployed. Defendant was employed and earning approximately $395.00 monthly before deductions, out of which he lived, made car payments and had $400–$500 in a bank account. Following their marriage plaintiff handled the family finances. Defendant continued his employment and by economical living there were additional monthly savings. After marriage plaintiff inherited some $1,200.00, out of which household goods valued from $400–$700 were purchased.

In November, 1960, the parties moved back to Lawton, Oklahoma, where each owned property. A joint bank account was opened with an initial deposit of $791.72, accumulated in California. Plaintiff borrowed $1,000.00 from a friend and this sum, together with $1,209.90 defendant received as retirement benefits from former employment, was deposited in the joint account. Thereafter plaintiff received $3,200.00 from sale of her property and defendant sold his property for $3,100.00, both amounts being deposited in the account.

Shortly thereafter the parties paid $13,500.00 for what was described as a rundown 170 acre farm in Johnston County, including one-half the mineral interest. The purchase price was paid $9,800.00 cash, and the remainder upon securing a $3,700.00 School Land Commission loan. From the loan proceeds $700.00 was used to discharge the balance of plaintiff's loan from the friend. After moving to the farm plaintiff was steadily employed in hospitals in nearby towns, earning $200.00 per month. Defendant was occupied with necessary rebuilding and improving of the farm, cultivating the tillable land and producing a large garden. Additionally, defendant purchased and cared for cattle, a farm team, milk cow and chickens. The parties were thrifty and produced a portion of their living from the land, while regularly supplementing their income by sale of surplus produce, and the cattle raised on the farm. The undisputed evidence established $17,000.00 as the minimum value of the improved farm.

Plaintiff was steadily employed during approximately five years on the farm. Apparently she became dissatisfied because her salary went largely for monthly living expenses, although it was made plain she preferred to work regularly, and the parties chose to live on and operate their farm.

Prior to the divorce action plaintiff complained frequently over expenditure of her earnings while defendant worked but did not produce a regular income. Admittedly plaintiff insisted defendant should seek regular employment. In deference to such urgings defendant twice had sought employment unsuccessfully in Oklahoma City. The divorce action was precipitated when defendant took his personal effects and left the farm on March 8th, going to a daughter's home in Moore, Oklahoma. Plaintiff's testimony was that defendant voluntarily left home. Defendant testified he left temporarily, at plaintiff's urging, to find employment and satisfy plaintiff's demands for contribution of regular income.

On May 6, 1965, plaintiff applied for and received a temporary restraining order, enjoining defendant from coming about "the person, property or home" of plaintiff. The petition for divorce was filed May 10th, asking that all real and personal property be awarded plaintiff as her separate and exclusive property. After filing suit plaintiff sold the remaining cattle, the team of horses purchased by defendant for farming, and the first hay cutting, for amounts totaling $1,400.00. Plaintiff used this money for living expenses, payment of unspecified debts, and for prosecution of this action. The sum derived from these sales represents the only affirmative evidence relating to value of personal property owned by the date of the divorce action.

The tenor of plaintiff's evidence was that, although the farm was their home by choice and there was no desire to live elsewhere, defendant did not work and did

not bring in a regular income. Despite plaintiff's evidence, there was substantial testimony from others for whom defendant worked for wages, showing defendant was an energetic individual who labored diligently to improve the farm and maintain a home. Defendant cultivated the land and harvested crops, raised cattle and hogs which were sold or utilized for food, and also raised a large garden each year for home consumption and canning. In addition to these activities and the usual farm chores, defendant worked on a per day basis for others. Defendant received cash payments from sales of cattle, farm produce, harvesting pecans and labor. Plaintiff disclaimed knowledge of the source or disposition of such funds. Cross-examination of plaintiff, however, brought out that defendant used these funds for payment of family obligations, licenses and farm payments, or other necessaries. Additionally, evidence introduced by plaintiff showed that during 1964 alone defendant netted over $1,500.00 from sale of farm livestock, which was used entirely for benefit of the family.

The record clearly shows that upon the marriage defendant contributed both savings and his regular earnings to the joint accumulation, while leaving management and disposition of family funds to plaintiff. The record shows with equal clarity plaintiff felt her own funds should be considered separate assets, for which she was entitled to full accounting plus benefit of any possible enhanced value. Enumeration and balancing of items of contribution and expenditures claimed by plaintiff, assertedly showing lack of financial contribution by defendant, is unnecessary. This marriage began with modest assets which were enhanced by joint efforts. Despite this, plaintiff's position is that from inception of the marriage what was hers belonged to her and what was defendant's was hers also.

Plaintiff asked that the farm with improvements, cattle, horses, farm machinery and pickup truck, and all household furnishings be awarded as her separate and exclusive property, together with costs and allowance for attorney's fees. After granting divorce, the trial court awarded plaintiff the real property, including mineral interest, subject to remaining indebtedness not shown by the evidence. Plaintiff also was awarded all personal property as her separate property. To effect what the trial court considered an equitable division of property, defendant was awarded the 1964 pickup subject to existing indebtedness, plus $3,500.00 money made a lien upon the property until paid.

The evidence does not show plaintiff's financial resources at the date of marriage. Defendant contributed his savings account, an automobile and to their livelihood after the marriage. To this estate plaintiff contributed $400.00 furniture out of her inheritance. Upon purchase of the property defendant contributed his savings account, retirement benefits and $3,100.00 from sale of his property. After purchase of the farm defendant's automobile was traded as a $600.00 allowance on the pickup. The plaintiff contributed the balance ($800) of her inheritance, $3,200.00 from sale of her property, and $300.00 from a personal loan. The evidence fairly established that of the initial farm payment plaintiff contributed approximately $4,650.00 and $5,100.00 was paid by defendant. The enhancement in value has been noted.

We recognize that a trial court's judgment making equitable division of jointly acquired property is to be accorded considerable weight and not to be disturbed unless the division is unfair, inequitable, or contrary to the evidence. Duboise v. Duboise, Okl., 418 P.2d 924. However, on appeal from a decree dividing jointly acquired property this court will examine the entire record and weigh the evidence. Allred v. Allred, 131 Okl. 55, 267 P. 842. Having examined this record carefully and at length, we are of the opinion the judgment rendered in making division of jointly acquired property under 12 O.S. 1961, § 1278, is inequitable and clearly contrary to the weight of the evidence. For these reasons the trial court's judgment cannot stand.

Where the trial court's judgment is clearly against the weight of the evidence and inequitable such judgment will be set aside on appeal and a proper judgment entered by this court. Helvey v. Helvey, Okl., 262 P.2d 445.

 The joint contributions of $9,800.00 made possible the initial acquisition of the farm, which represents the principal item of jointly acquired property. Defendant contributed $5,100.00 toward the purchase, and also assumed the school land obligation of $3,700.00, which completed the purchase price. Out of this loan $700.00 was expended in repayment of the $1,000.00 personal indebtedness incurred by plaintiff. Through their joint efforts, but due largely to defendant's husbandry, the minimum enhancement in value was $2,500.00 above the original purchase price. After filing the divorce action plaintiff sold personal property valued at $1,400.00, and expended these proceeds for her own purposes.

We are of the opinion an equitable division of the jointly acquired property will be accomplished by making the following disposition. Although defendant sold his home and contributed the proceeds he will be left without a home. For this reason he should be allowed $3,100.00 which went into the farm. One-half of the enhanced value of the farm should be credited to defendant. Plaintiff's personal loan was discharged by payment of $700.00 out of loan proceeds, and defendant should receive half this amount, as well as half the proceeds of the $1,400.00 property sales which plaintiff made after filing this action. When purchased in 1960 the parties acquired one-half the mineral interest in the land, and defendant is entitled to an equal division, or undivided one-fourth of the minerals.

In Amsey v. Amsey, 201 Okl. 261, 204 P.2d 975, we pointed out that jointly acquired property resulted from the ability, financial condition at the time of marriage and constant hard work of defendant during coverture. And, that the defendant's income would have been the same during cov-

erture whether single or married. The same sound reasoning should apply here. Although true that plaintiff worked and contributed to their accumulation, this record discloses that defendant's income and financial position would have been equal to, or even greater, than his present situation, had these parties not married and combined their efforts.

The trial court's judgment as respects division of the property is modified to provide that plaintiff execute conveyance of an undivided one-fourth of the mineral interest to defendant. The decree is further modified in that defendant shall receive the sum of $5,400.00, payable within nine months after this judgment becomes final. This judgment constitutes a lien upon the real property until paid. The judgment of the trial court in all other respects is affirmed.

All Justices concur.