WOODROOF v. BARRINGTON, Adm'r.

No. 32786.    Sept. 16, 1947.

*184 P. 2d 771.*

———

Harold McArthur, of Tulsa, for plaintiff in error.

Rosenstein, Fist & Shidler, of Tulsa, for defendant in error.

LUTTRELL, J.    This action was brought by plaintiff, Clive Woodroof, against defendant, Shelby G. Barrington, administrator of the estate of Treva Woodroof, deceased, to vacate a judgment for alimony and division of property, formerly rendered in favor of Treva Woodroof and against Clive Woodroof, and for an accounting for certain sums of money in the hands of defendant administrator, and certain rents and profits alleged to have been collected by him.    The trial court sustained a general demurrer to plaintiff's amended petition; plaintiff elected to stand on the amended petition and thereupon the trial court dismissed the action.    Plaintiff appeals.

The appeal is by transcript and the pleadings and journal entry of judgment in the divorce case, brought by Treva Woodroof against the plaintiff, Clive Woodroof, are attached to the amended petition filed by plaintiff. Therefrom it appears that by her petition filed in February, 1942, Treva Woodroof sued the defendant for divorce, alimony and a division of jointly acquired property.    To her petition Clive Woodroof filed an answer denying generally "the allegations for grounds of divorce as alleged in plaintiff's petition."    The journal entry of judgment in said cause shows that trial was begun on April 24, 1942, and that the case was taken under advisement until May 9, 1942; that on May 9, 1942, the plaintiff advised the court that she preferred to have a decree of separate maintenance instead of a divorce, and a settlement of all property rights between plaintiff and defendant; that the defendant had evidenced his willingness to such modification and to pay to the plaintiff separate maintenance in the sum of $30 per month, and that thereupon the court, after consent by defendant through his counsel in open court, approved said modification and agreement; that thereupon the court

found that the defendant in said action was guilty of cruel and inhuman treatment as alleged in plaintiff's petition, and that plaintiff was entitled to a decree for separate maintenance and a settlement of property rights, and divided the property between the parties, awarding the plaintiff, Treva Woodroof, two pieces of property in Tulsa together with the household goods and personal property therein, and awarding the remainder of the property to the defendant, Clive Woodroof. The court directed both parties to execute quitclaim deeds conveying to the other party the property awarded to such other party, but apparently this was not done.

Plaintiff, in his petition in the instant case, states that in the month of May, 1942, the date not being shown, he and Treva Woodroof became reconciled, and maintained the relation of husband and wife until November 2, 1943, at which time he was adjudged insane and committed to the Eastern Oklahoma Hospital at Vinita; that in 1944 he was paroled from said institution and went to the State of Kansas where he has resided since that time, and that on April 1, 1945, he was ordered discharged by the superintendent of said institution. He alleges that the judgment in the divorce action, in so far as a division of property was concerned, is void and a nullity and invested the deceased, Treva Woodroof, with no right, title or interest in and to the real estate thereby adjudged to be her property. Treva Woodroof died October 23, 1945; letters of administration were issued to defendant on November 4, 1945, and he has since that date acted as administrator. This action was commenced on December 11, 1945.

Plaintiff contends that Treva Woodroof, by her statement to the court in the divorce proceeding that she preferred to have a decree of separate maintenance and settlement of property rights instead of a divorce, elected to abandon her suit for divorce, and by such election brought the action within the provisions of 12 O.S. 1941 §1284, which provides that the wife or husband may obtain alimony from the other without a divorce in an action brought for that purpose, citing in support of his contention Williams v. Williams, 103 Okla. 194, 229 P. 797; Lewis v. Lewis, 39 Okla. 407, 135 P. 397; Anderson v. Anderson, 140 Okla. 168, 282 P. 335; Harden v. Harden, 182 Okla. 364, 77 P. 2d 721, and other authorities. Examination of all these cases discloses that in each the action was originally brought for alimony or separate maintenance without divorce under the provisions of the section above cited. In them the court held, either inferentially or expressly, that in an action brought only for alimony or separate maintenance, the trial court was without authority to divide the property of the parties. The factual differences between those cases and the case at bar render the decisions inapplicable to the instant case.

The divorce proceeding involved in the instant case was not originally brought under said section but, as above stated, was an action for divorce, alimony and the division of jointly acquired property. We do not agree that when she waived her right to obtain a decree of divorce, the plaintiff in that action, Treva Woodroof, thereby changed her action to one for alimony or separate maintenance only, for she specifically affirmed her desire for division of the property, and the defendant in that action agreed that the court could divide the property between the parties.

We are inclined to the view that by her action Treva Woodroof brought herself within the provisions of 12 O.S. 1941 §1275. That section provides as follows:

"When the parties appear to be in equal wrong, the court may in its discretion refuse to grant a divorce, and in any such case or in any other case where a divorce is refused, the court may for good cause shown make such

order as may be proper for the custody, maintenance, and education of the children, and for the control and equitable division and disposition of the property of the parties, or of either of them, as may be proper, equitable and just, having due regard to the time and manner of acquiring such property, whether the title thereto be in either or both of said parties."

While the section uses the term "in any other case where a divorce is refused", we think that the word "refused" is used in a broad sense, and that the Legislature thereby granted to the district court the right to divide the property when good cause for such division is shown in any case involving marital difficulties in which a divorce is for any reason not granted.

In Hicks v. Conn (Ky.) 109 S.W. 2d 811, the court considered a statute requiring notice of an election to be published in a newspaper unless the proprietor of the newspaper "refuses to publish said advertisement". The Court of Appeals of Kentucky, in considering the meaning of the term "refuses" as used in the statute, said:

"The word 'refuses', like many other words in our language, is elastic and is of somewhat varied signification according to the context in which it is found and the nature of the subject-matter to which it refers. Refusal usually implies a previous demand or request or the existence of circumstances equivalent thereto. But, as stated in Mackey v. U. S. (C.C.A. 6) 290 F. 18, to 'refuse' does not necessarily imply to deny deliberately a previous demand. One of the general definitions of 'refuse' is to 'withhold.' Webster's New International Dictionary. The word has been given judicial construction as being a synonym of failure."

The statute above quoted was adopted from Kansas and the decisions of that state construing it, although not conclusive, are very persuasive.

In Wulf v. Fitzpatrick (Kan.) 261 P. 838, the only case we have been able to find in which the factual situation is identical with that in the case at bar, the court held a judgment making division of property within the power of the trial court under an identical statute.

In that case Mary Fitzpatrick sued her husband James Fitzpatrick for divorce. At the hearing she made it known to the court that because of her religious faith she did not desire an absolute divorce, and the trial court undertook to grant her a divorce in the nature of a divorce a mensa et thoro, a limited divorce rendering inoperative the marital relation but not dissolving it. The court also divided the property between the parties and decreed that thereafter neither party should have any right or interest in the property of the other. Thereafter Mary Fitzpatrick died leaving a will disposing of the property so awarded to her. Her executor brought an action against James Fitzpatrick for a declaratory judgment to determine the effect of the decree in the divorce action and the later will of Mary Fitzpatrick, in which action James Fitzpatrick contended that he was the owner of the property.

The Supreme Court of Kansas held that the limited divorce was void, but that the division of property was authorized by the section of the Kansas Code corresponding to our section 1275, above quoted, and that it vested Mary Fitzpatrick with fee-simple title to the property.

This court, in Barker v. Barker, 105 Okla. 240, 232 P. 371, gave the statute a similar construction and applied it in a case where neither party sought a divorce, but both sought a division of the property, each alleging that because of the fault of the other party further living together had become impossible. In that case we said:

"Under these circumstances, it is the duty of the trial court to 'make such order as may be proper for the custody, maintenance, and education of the children, and for the control and equitable

division and disposition of the property of the parties, or of either of them, as may be proper, equitable and just, having due regard to the time and manner of acquiring such property, whether the title thereto be in either or both of said parties'."

The construction placed upon the above-quoted section in the case above cited appears to be a reasonable construction. We perceive no substantial distinction in cases where, although grounds for divorce are established, the right to a divorce is waived or relinquished, and in cases where, although a divorce is sought, it is denied by the trial court. Whether in such cases the divorce is not sought by the parties, or whether it is sought, but not granted by the trial court, their situation, in so far as the right to the division of the property is concerned, is identical. We think that section 1275 applies to all such cases where a divorce is not granted, and that in such cases whether or not jointly acquired property should be divided is left to the sound discretion of the trial court. It would be inconsistent with reason and justice to hold that where a divorce is refused by the trial court the jointly acquired property may be divided, but that where the right to divorce is waived or renounced by the parties the court is without power to divide the jointly acquired property, although the evidence shows good cause for such division.

In Hawkins v. Whayne, 198 Okla. 400, 179 P. 2d 138, we held that where the legislative intent was plainly discernible from the provisions of the statute when considered as a whole, the real purpose and intent would prevail over the literal import of the words employed. In that case we held that while a statute by its terms embraced only restrictions contained in deeds in the chain of title, we would construe the word "deeds" as a generic term, and held that it included also restrictions contained in plats and dedications or agreements by property owners.

We think that rule applies here and that the construction given to the statute by the Kansas court in Wulf v. Fitzpatrick, supra, and the construction placed upon it by this court in Barker v. Barker, supra, gives to the statute the meaning and effect which the Legislature intended. Plaintiff does not contend that in the divorce case no sufficient ground for the division of the property was shown. We hold that the judgment in that case was valid and binding upon the parties.

Plaintiff, in the instant case, argues that the division of the property was improper as no divorce was granted because plaintiff withdrew her application therefor, and that, therefore, there was always a possibility that they would be reconciled. But the same possibility exists in cases where a divorce is denied. We are of opinion that section 1275, supra, applies in either case.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, WELCH, and CORN, JJ., concur.